**AUSTIN LEGAL GROUP, APC**
GINA M. AUSTIN (SBN 246833)
E-mail: gaustin@austinlegalgroup.com
TAMARA LEETHAM ROZMUS (SBN 234419)
E-mail: tamara@austinlegalgroup.com
3990 Old Town Ave, Ste A-101
San Diego, CA 92110
(619) 924-9600/ FAX (619) 881-0045

**LITTLER MENDELSON PC**
MICHAEL G. PEDHIRNEY (SBN 233164)
E-mail: mpedhirney@littler.com
101 2nd St, Suite 1000
San Francisco, CA 94105

Attorneys for Plaintiff
Ctrl Alt Destroy, Inc.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CTRL ALT DESTROY, INC, California corporation<br><br>Plaintiff,<br><br>v.<br><br>NICOLE ELLIOTT In Her Official Capacity As Director Of The State Of California's Department Of Cannabis Control; ROB BONTA In His Official Capacity As Attorney General Of The State Of California; and DOES 1-10, Inclusive,<br><br>Defendants. | Case No: **'24CV0753 LL   JLB**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Ctrl Alt Destroy, Inc. ("CAD" or "Plaintiff"), by and through counsel, for its complaint against defendants Nicole Elliott in her official capacity as director of the State of California's Department of Cannabis Control ("DCC"), Rob Bonta, Attorney General of the State of California, and DOES 1-10 (collectively "Defendants"), alleges as follows:

### Nature Of The Action

1. CAD filed this action for declaratory and injunctive relief pursuant to the Declaratory Relief Act, 28 U.S.C. Sections 2201-2202, to declare California Business and Professions Code section 26001 including 26001(ab) ("Section 26001") and 26051.5(a)(5)(A)-(E) ("Section 26051.5"), 4 CCR 15002(19), 4 CCR 15023(b), and 4 CCR 17801 (collectively the "LPA Sections") unconstitutional under the United States Constitution, and that the LPA Sections are preempted under the National Labor Relations Act ("NLRA"), 29 U.S.C. Section 151 et seq.

2. CAD also seeks preliminary and permanent injunctive relief enjoining enforcement of the LPA Sections and other related actions undertaken by Defendants pursuant to these provisions.

### Jurisdiction And Venue

3. Jurisdiction of this action arises under (a) 28 U.S.C. § 1331 because Plaintiff's claims arise under (i) the due process and equal protection provisions of the Fifth and Fourteenth Amendments to the United States Constitution, which incorporates the free speech provisions of the First Amendment; (ii) the Supremacy Clause of the Constitution of the United States, Article VI, clause 2 which designates the Constitution and the Laws of the United States as the supreme Law of the Land; and (iii) the laws of the United States, namely the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq.; and (b) under 28 U.S.C. §§ 2201-2202, since this is an actual controversy in which CAD seeks declaratory judgment.

///

4. Venue is proper in the Southern District of California under 28 U.S.C. § 1391(b) because CAD is a resident of, found within, and has agents within, or transacts its affairs in the Southern District of California and where a substantial part of the events giving rise to Plaintiff's claims have occurred, are now occurring, and will occur in the future if not curtailed by this Court. Further, the DCC's enforcement authority as to CAD occurs in the Southern District of California.

## The Parties

5. CAD is a corporation, organized and existing under California law, with a principal place of business at 8300 Center Drive, La Mesa, California 91942. CAD is a retailer of cannabis, holds a "License" as defined in California Business and Professions Code section 26001 (ac), is a "Licensee" as defined in California Business and Professions Code section 26001(ad), and is subject to DCC regulation as the "Licensing Authority" pursuant to California Business and Professions Code section 26001(ae).

6. Defendant Nicole Elliott in her official capacity as the Director of California's DCC is located at 2920 Kilgore Road, Rancho Cordova, California 95670. Defendant DCC is the state agency designated by the State of California for administering and enforcing the LPA Sections. The DCC evaluates whether an applicant qualifies for licensure, issues licenses, and enforces violations to include violations of the LPA Sections.

7. Defendant Rob Bonta is the Attorney General of the State of California and is sued in his official capacity. Pursuant to Article V, Section 13 of the California Constitution, he is the "chief law officer" of the state and it is his duty to "see that the laws of the State are uniformly and adequately enforced." (Cal. Const. art. 5, § 13.) Defendant Bonta has "direct supervision over every district attorney" within California. (*Id.*) If, at any point a district attorney fails to

adequately enforce "any law of the State," he must "prosecute any violations of the law." (*Id.*)

8. Plaintiff is unaware of the names or identities of Does 1-10.

## The Facts

### California's Statutory Scheme- LPA Sections

9. In 2015, California enacted three bills, AB 243, AB 266, and SB 643, that collectively established a comprehensive state regulatory framework for licensing medical cannabis. These three bills were collectively known as the Medical Cannabis Regulation and Safety Act ("MCRSA"). MCRSA included a provision that required cannabis operators with 20 or more employees to provide a statement agreeing to enter into a Labor Peace Agreement or demonstrate it had already entered into a Labor Peace Agreement. MCRSA did not proscribe the timeframe a cannabis operator had to enter into a Labor Peace Agreement after hiring the twentieth employee.

10. In November 2016, California voters approved Proposition 64, or the Adult Use of Marijuana Act ("AUMA"). Beginning January 2018, AUMA allowed adults 21 years of age or older to legally grow and possess cannabis for non-medical purposes and made it legal to sell and distribute cannabis. Unlike MCRSA, AUMA did not include a specific Labor Peace Agreement provision.

11. In June 2017, because of the inconsistencies between MCRSA and AUMA, the California legislature passed SB 94. SB 94 repealed MCRSA and consolidated MCRSA and AUMA. This new regulatory scheme, which remains in effect, is referred to as MAUCRSA. MAUCRSA is codified at California Business and Professions Code section 26000 et seq. and creates California's cannabis regulatory scheme including a detailed and comprehensive enforcement structure for violations of its provisions. MAUCRSA is administered and enforced by the DCC as set forth in California Code of Regulations, Title 4, 15000 et seq. as well as, at a minimum, Title 4, 17801.

12. MAUCRSA contains a provision that both medical and adult use cannabis licenses with 20 or more employees must enter into a Labor Peace Agreement.

13. MAUCRSA's stated purpose is to protect the public safety with regard to cannabis products. In other words, to regulate cannabis products in California.

14. Section 26001(ab) states "'Labor Peace Agreement' means an agreement between a licensee and any bona fide labor organization that, at a minimum, protects the state's proprietary interests by prohibiting labor organizations and members from engaging in picketing, work stoppages, boycotts, and any other economic interference with the applicant's business. This agreement means that the applicant has agreed not to disrupt efforts by the bona fide labor organization to communicate with, and attempt to organize and represent, the applicant's employees. The agreement shall provide a bona fide labor organization access at reasonable times to areas in which the applicant's employees work, for the purpose of meeting with employees to discuss their right to representation, employment rights under state law, and terms and conditions of employment. This type of agreement shall not mandate a particular method of election or certification of the bona fide labor organization."

15. Section 26036 states "[n]othing in this division shall be interpreted to supersede or limit state agencies from exercising their existing enforcement authority, including, but not limited to, under the Fish and Game Code, the Food and Agricultural Code, the Government Code, the Health and Safety Code, the Public Resources Code, the Water Code, or the application of those laws.

16. Section 26051.5(a)(5)(A)(i)-(iv) is set forth as follows:
   a. (i) For an applicant with 20 or more employees, or an applicant with 10 or more employees that submits an application on or after July 1, 2024, provide a notarized statement that the applicant will enter into, or

1  demonstrate that it has already entered into, and will abide by the terms of a
2  labor peace agreement. On and after July 1, 2024, the department shall not
3  renew a license for a licensee with 10 or more employees unless the licensee
4  provides a statement that the licensee has already entered into and will abide
5  by the terms of a labor peace agreement.

6      b.    (ii) For an applicant with 10 or more employees but less than 20 employees that has not yet entered into a labor peace agreement, provide a notarized statement as a part of its application indicating that the applicant will enter into and abide by the terms of a labor peace agreement within 60 days of employing its 20th employee, or on or before July 1, 2024, whichever is earlier.

c.    (iii) For an applicant with less than 10 employees that has not yet entered into a labor peace agreement, provide a notarized statement as a part of its application indicating that the applicant will enter into and abide by the terms of a labor peace agreement within 60 days of employing its tenth employee or on or before July 1, 2024, whichever is later.

d.    (iv) Nothing in this paragraph shall be construed to limit the authority of the department to revoke or suspend a license for a violation of this paragraph.

17.    4 CCR 15002 sets forth annual license application requirements. 4 CCR 15002(19) states "[f]or a commercial cannabis business with 20 or more employees, the applicant shall either provide a notarized statement that the commercial cannabis business will enter into, or demonstrate that it has already entered into, and abide by the terms of a labor peace agreement. For a commercial cannabis business with less than 20 employees that has not yet entered into a labor peace agreement, provide a notarized statement indicating that the applicant will enter into and abide by the terms of a labor peace agreement within 60 days of employing its 20th employee."

18. 4 CCR 15023(b) requires a cannabis business modification when "[i]f at the time of licensure, a licensee employed less than 20 employees and later employees 20 or more employees, within 60 days of employing 20 or more employees, the licensee shall provide to the Department a notarized statement that the licensee will enter into a labor peace agreement and will abide by the terms of the agreement."

19. The DCC may suspend or revoke a license and place on probation or fine a Licensee who "is found to have committed any of the acts or omissions constituting grounds for disciplinary action." (§ 26031(a); Cal. Code Regs. Tit 4, §§ 17801, 17802, 17809-17810.) These grounds include "[f]ailure to comply with the provisions of [the Act] or any rule or regulation adopted pursuant to [it]." (§ 26030(a).)

20. 4 CCR 17801, entitled Notice to Comply, is set forth as follows:
> (a) The Department [DCC] may issue a Notice to Comply to a licensee for violation(s) of the Act or this division discovered during an investigation or observed during an inspection.
> (b) The Notice to Comply shall be in writing and describe the nature and facts of each violation, including a reference to the statute or regulation violated, and may indicate the manner in which the licensee must correct the violation(s) to achieve compliance.
> (c) The Department [DCC] may serve the Notice to Comply personally or by mail to the licensee, employee, agent, or person delegated by the licensee to accept notice.
> (d) The licensee shall sign and return the Notice to Comply and, if required, a written plan to address the violations or describe how compliance was achieved within 30 calendar days after the date of personal service or mailing of the notice, or a different date specified by the Department. The Department may also require the licensee to

|   |   |
|---|---|
| 1 | provide a plan for review and approval by the Department on a case- |
| 2 | by-case basis. |
| 3 | (e) Failure to correct the violation(s) in the Notice to Comply may |
| 4 | result in disciplinary action. |

21. In 2022, California's governor signed AB 195. AB 195 included a provision requiring cannabis operators with 10 or more employees (rather than the previous 20) to provide a statement that the cannabis operator will enter into a Labor Peace Agreement or demonstrate that it already entered into one beginning July 1, 2024.

22. AB 195 also created a procedure for any labor organization or any current or former employee of a licensed cannabis operator to file a complaint with the Agricultural Labor Relations Board challenging the validity of the labor organization with whom the cannabis operator entered into a Labor Peace Agreement.

**The Applicable Federal Statute**

23. The LPA Sections constitute an attempt by Defendants to regulate CAD's labor relations in violation of the NLRA, which preempts such efforts.

24. The NLRA governs labor relations for all private sector employers. The NLRA contains exhaustive regulation for labor relations, including, but not limited to, collective bargaining, selection of representation, and the dispute resolution process.

25. Whether an employer is covered by the NLRA is determined by the National Labor Relations Board ("NLRB"). The NLRB has exclusive jurisdiction to resolve disputes over whether and by whom employees are represented for collective bargaining purposes.

26. Defendants may not adopt and enforce regulations that conflict with federal labor law or that would have the effect of regulating aspects of labor-management relations governed by those laws. State or local government actions

that purport to regulate activities that are protected, prohibited, or intentionally left unregulated by the NLRA are preempted. (*San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959); *Int'l Ass'n of Machinists v. Wisc. Employment Rel. Comm'n,* 427 U.S. 132 (1976).)

27. The LPA Sections impermissibly intrude into federally governed labor relations under the NLRA by requiring CAD to enter into a Labor Peace Agreement with a "bona fide" labor organization and authorizing the DCC enforcement authority, to include license revocation, should CAD decline to do so. Put another way, as a condition of California cannabis licensure, and as part of California's cannabis regulatory scheme, CAD must agree to negotiate and enter into a Labor Peace Agreement with a "bona fide" Labor Organization that does not represent CAD's employees, regardless of the employees' wishes. The "bona fide" labor organization thus effectively becomes the employees' bargaining representative with whom CAD must deal without regard to the NLRA's processes and requirements.

28. The LPA Sections also mandate that the Labor Peace Agreement include a binding and enforceable provision prohibiting labor organizations and its members from "…engaging in picketing, work stoppages, boycotts, and any other economic interference…" (Section 26001.) Again, the labor organization effectively becomes the CAD employees' representative without having been certified as such by the NLRB, by virtue of the ability to negotiate over the CAD employees' ability to strike.

29. In the event the labor organization and CAD are unable to agree to a Labor Peace Agreement, or a dispute arises between CAD and labor organization, there is no mechanism by which the dispute will be settled.

30. In addition, although CAD must enter into a Labor Peace Agreement, or risk its licensure, there is no corresponding obligation of the labor organization

to request a Labor Peace Agreement (and thus agree to a no-strike provision), or to honor a request by CAD to enter into a Labor Peace Agreement.

31. These provisions, alone and in combination, impermissibly skew the "playing field" between labor and CAD by giving unfettered leverage to a labor organization dealing with CAD. It is wholly within the labor organization's discretion whether to commit to a Labor Peace Agreement with CAD (with its concomitant no-strike provision) and CAD has no ability to leverage or negotiate with the labor organization because the Labor Peace Agreement is a mandate.

32. The LPA Sections have stripped CAD of all negotiating power as it must obtain a binding Labor Peace Agreement with a no strike provision, allowing the labor organization to withhold its agreement to unless and until it obtains significant concessions.

33. Finally, the LPA Sections do not appear to provide any sanction against a labor organization that violates a no-strike provision entered into as part of a Labor Peace Agreement. CAD, on the other hand, faces the imposition of costs and other penalties by the DCC, including the loss of its right to do business altogether.

**Unconstitutional Vagueness**

34. The LPA Sections violate the constitutional due process requirement in that the LPA Sections do not properly distinguish permissible from impermissible conduct. The LPA Sections are unconstitutionally void for vagueness because they do not clearly distinguish between lawful and unlawful conduct.

35. The following terms, definitions, or phrases render the LPA Sections void for vagueness: the term "Labor Peace Agreement," the definition of "Labor Organization," and the term "bona fide Labor Organization."

36. Beyond the requirement that a Labor Peace Agreement prohibit a labor organization and its members from engaging in the picketing, work

stoppages, boycotts, or any other economic interference for its duration, the term "Labor Peace Agreement" is subject to broad and unreasonable interpretation and could include anything demanded by any party at any time that is not facially inconsistent with the LPA Sections.

37. Further, the term "bona fide labor organization" is subject to broad and unreasonable interpretation and could include or exclude any person or entity claiming or seeking to represent workers.

38. Additionally, the LPA Sections do not set forth a dispute resolution process. A few examples of missing terms include, but are not limited to:

   (a) Procedures for dispute resolution;
   (b) What rules apply to dispute resolution;
   (c) What terms of a Labor Peace Agreement would be considered standard or acceptable in the event dispute resolution failed between CAD and a labor organization;
   (d) Whether CAD would be bound by the Labor Peace Agreement if the labor organization does not honor the applicable terms;
   (e) If and how an alleged penalty would be assessed against CAD for non-compliance;
   (f) Whether there would be a penalty against any labor organization, its members, and or CAD employees that violated a no-strike provision in a Labor Peace Agreement;
   (g) Whether CAD is required to enter into a Labor Peace Agreement if its employees already have a collective bargaining representative.

**Imminent Harm**

39. On December 3, 2018, CAD obtained its first medicinal retailer temporary license, license number C10-18-0000103-TEMP. This license was valid between December 3, 2018 and April 2, 2019. CAD renewed license number C10-18-0000103 and it expired on July 1, 2019. In 2019 the DCC began

converting temporary licenses to provisional licenses. On or about June 25, 2019 the C10-18-0000103-TEMP license was converted to provisional license number C10-0000290-LIC that was valid until June 24, 2020. The C10-0000290-LIC was renewed in June 2020 and June 2021 and expired June 24, 2022. The C10-0000290-LIC was converted to an annual license on or about June 2022 and expired June 24, 2023. The C10-0000290-LIC annual license was renewed in June 2023 and currently expires June 24, 2024.

40. As part of its submittal to the DCC to renew C10-0000290-LIC in 2021, CAD provided a notarized declaration that it would enter into a Labor Peace Agreement within 60 days of employing its twentieth employee.

41. By October 2022, CAD employed 20 or more employees.

42. On or around October 11, 2022, consistent with MAUCRSA, CAD entered into a Labor Peace Agreement with a union named Professional Technical Union, Local 33 ("Pro-Tech 33").

43. Thereafter, CAD provided the DCC a copy of its Labor Peace Agreement with Pro-Tech 33.

44. On July 10, 2023, the DCC sent an email to all licensees and applicants stating that "Agricultural Labor Relations Board (ALRB) has determined that Professional Technical Union, Local 33 (Pro-Tech 33) is not a bona fide labor organization [and] any labor peace agreements entered into by licensees with Pro-Tech 33 are null and void. These agreements can no longer be used to satisfy the requirement for licensees and applicants who must enter into a labor peace agreement."

45. Given this finding, the CAD-Pro Tech 33 Labor Peace Agreement is null and avoid. CAD must agree to a Labor Peace Agreement under the LPA Sections. If CAD refuses to enter into a Labor Peace Agreement, it will lose its right to do business in California.

46. If forced to enter into a Labor Peace Agreement, the labor organization would, of course, seek something in return, altering the terms of employment for CAD's employees, and increasing costs to CAD.

47. Thus CAD will suffer injury if DCC enforcement of the LPA Sections is not enjoined.

48. CAD has no adequate remedy at law. If an injunction is granted, Defendants will not suffer any cognizable harm. Defendants cannot claim injury from an order requiring them to comply with pre-existing Federal law. Far greater injury will be inflicted on CAD and its employees if the Court refuses the relief sought herein than Defendants will suffer by the grant of declaratory and injunctive relief.

## Count One

## Claim For Declaratory And Injunctive Relief

49. CAD repeats and realleges paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50. The LPA Sections are unconstitutional under the United States Constitution.

51. The LPA Sections violate the Fifth and Fourteenth Amendments to the United States Constitution which protects the freedom of speech guarantee found in the First Amendment to the United States Constitution in ways that include, but are not limited to: (1) engaging in content based discrimination by forcing CAD to agree not to disrupt efforts by a bona fide labor organization to communicate with, and attempt to organize and represent, CAD's employees, which results in repressing CAD's expression concerning the merits of unionization; (2) requiring CAD to relinquish this right as a condition of state licensure; (3) being so vague as to chill the exercise of protected free speech rights; and (4) imposing a prior content based restraint on constitutionally protected expressions.

52. The LPA Sections violate the Equal Protection Clause guarantees of the Fourteenth Amendment of the United States Constitution in ways that include, but are not limited to: (1) favoring unions desiring to advance their cause with employees while requiring CAD to remain silent and forego free speech if questioning unionization; and (2) treating all California employers that meet the employee threshold for the Labor Peace Agreement differently thus allowing many employers their Constitutional and NLRA rights while denying those rights to CAD.

53. The LPA Sections are preempted by the NLRA, including preemption under 8(c) of the NLRA which states that the expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice… if such expression contains no threat of reprisal or force or promise of benefit.

54. The LPA Sections are preempted under 8(c) pursuant to the *Garmon* preemption set forth in *San Diego Bldg. Trades Council v. Garmon* 359 U.S. 236 (1959), in that the LPA Sections purport to frustrate or prohibit conduct permitted and rights guaranteed to employers under the NLRA. The LPA Sections are also preempted pursuant to the *Machinists* preemption under *International Association of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132 (1976) in that the LPA Sections purport to regulate areas Congress intentionally left to be controlled by the free play of economic forces.

55. Without a declaratory judgment and an injunction enjoining enforcement of the LPA Sections, CAD, and its employees, will be deprived of the rights this Complaint seeks to enforce.

///
///
///
///

## Count Two

## Due Process (Void for Vagueness); Fifth and Fourteenth Amendments Of The United States Constitution

56. CAD repeats and realleges paragraphs 1 through 55 of this Complaint as though fully set forth herein.

57. Anyone of reasonable intelligence must necessarily guess what conduct is permitted or prohibited under the LPA Sections.

58. The LPA Sections are impermissibly vague in all of their applications, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

## Prayer for Relief

WHEREFORE, plaintiff Ctrl Alt Destroy, Inc. prays this Court:

1. Issue a Declaratory Judgment the LPA Sections are (1) unconstitutional under the United States Constitution and preempted by the NLRA.

2. Issue a temporary, preliminary, and permanent injunction:

    a. Restraining and enjoining Defendants, their agents, and employees, and all persons acting in concert or participation with them, from, in any manner or by any means, enforcing or seeking to enforce the LPA Sections and any other law that requires CAD to enter into Labor Peace Agreements, determined by this Court to be invalid, pre-empted by federal law and impermissibly vague;

    b. Requiring Defendants to issue such notices, and take such steps as shall be necessary and appropriate to carry into effect the substance and intent of paragraph (a) above, including but not limited to, the requirement that Defendants publicly withdraw and rescind any directions, requests or suggestions to CAD that it is bound by or must be bound by the LPA Sections and any other

1 | state law that requires CAD to enter into Labor Peace Agreements, determined by
2 | this Court to be invalid, pre-empted by federal law and impermissibly vague.
3 |     3.    Grant such other, further or different relief as to which CAD may be
4 | entitled.

DATED: April 26, 2024      AUSTIN LEGAL GROUP, APC.

By:

/s/ Gina M. Austin

_____
GINA M. AUSTIN
Attorney for Plaintiff Ctrl Alt Destroy, Inc.

DATED: April 26, 2024      AUSTIN LEGAL GROUP, APC.

By:

/s/ Tamara Leetham Rozmus

_____
TAMARA LEETHAM ROZMUS
Attorney for Plaintiff Ctrl Alt Destroy, Inc.

**COMPLAINT**