**AUSTIN LEGAL GROUP, APC**
GINA M. AUSTIN (SBN 246833)
E-mail: gaustin@austinlegalgroup.com
TAMARA LEETHAM ROZMUS (SBN 234419)
E-mail: tamara@austinlegalgroup.com
3990 Old Town Ave, Ste A-101
San Diego, CA 92110
Phone: (619) 924-9600/Fax: (619) 881-0045

**LITTLER MENDELSON PC**
MICHAEL G. PEDHIRNEY (SBN 233164)
E-mail: mpedhirney@littler.com
101 2nd St., Suite 1000
San Francisco, CA 94105

Attorneys for Plaintiff
Ctrl Alt Destroy, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CTRL ALT DESTROY, INC, California corporation<br><br>Plaintiff,<br><br>v.<br><br>NICOLE ELLIOTT In Her Official Capacity As Director Of The State Of California's Department Of Cannabis Control; ROB BONTA In His Official Capacity As Attorney General Of The State Of California; and DOES 1-10, Inclusive,<br><br>Defendants. | Case No: 3:24-CV-0753-LL-JLB<br><br>**PLAINTIFF CTRL ALT DESTROY, INC.'S OPPOSITION TO MOTION TO INTERVENE BROUGHT BY PROPOSED INTERVENOR INTERNATIONAL BROTHERHOOD OF TEAMSTERS**<br><br>**Per Chambers Rules No Oral Argument Unless Separately Ordered By The Court**<br><br>Judge:      Hon. Linda Lopez<br>Date:        July 26, 2024<br>Courtroom: 5D<br><br>Action filed: April 26, 2024<br>Trial Date:    Not Set |

# **TABLE OF CONTENTS**

I.     SUMMARY OF RESPONSE IN OPPOSITION ......................................... 1

II.    STATEMENT OF FACTS................................................................... 2

  A.   The LPA Sections At Issue In This Litigation................................. 2

  B.   The Applicable Federal Statute ................................................... 3

  C.   Teamsters' Facts In Support Of Intervention................................. 5

III.   STANDARDS FOR RULE 24 INTERVENTION ................................. 6

  A.   The Teamsters' Request To Intervene As Of Right Under Rule 24(a)(2)
Should Be Denied .......................................................................... 7

    1. Requirement 2: The Teamsters Have Not Demonstrated A Significantly
Protectable Interest. ...................................................................... 7

    2. Requirement 3: The Teamsters Have Not Demonstrated Practical
Impairment Of An Interest. ........................................................... 12

    3. Requirement 4: The Teamsters' Interests Are Adequately Protected By
Defendants. ................................................................................ 14

  B.   No Rule 24(b) Permissive Intervention ....................................... 16

IV.    CONCLUSION ............................................................................. 17

1
2

# TABLE OF AUTHORITIES

3

**CASES**

4

*Allied Concrete and Supply Co. v. Baker*, 904 F.3d 1053 (9th Cir. 2018)............... 8

5

*Arakaki v. Cayetano,* 324 F.3d 1078 (9th Cir. 2003) ......................................... 6, 14

6

*California for a Safe and Competitive Dump Truck Transportation v. Mendonca,*

7
   152 F.3d 1184 (9th Cir. 1988) ................................................................... 8

8

*California Trucking Assn. v. Bonta,* 996 F.3d 644 (9th Cir. 2020)........................ 8

9

*Dilks v. Aloha Airlines,* 642 F.2d 1155 (9th Cir. 1981) ......................................... 8

10

*Donnelly v. Glickman,* 159 F.3d 405 (9th Cir. 1998)........................................ 8, 16

11

*Freedom from Religion Found., Inc. v. Geithner,*

12
   644 F.3d 836 (9th Cir. 2011) ................................................................. 6, 12

13

*Int'l Ass'n of Machinists v. Wisc. Employment Rel. Comm'n,*

14
   427 U.S. 132 (1976)................................................................................. 4

15

*League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297 (9th Cir. 1997) ..... 6

16

*Nw. Forest Res. Council v. Glickman* 82 F.3d 825 (9th Cir. 1996) ............... 7, 8, 16

17

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland,*

18
   960 F.3d 603 (9th Cir. 2020) .................................................................. 14

19

*People ex rel Lockyer v. U.S.*, 450 F.3d 436, 444 (9th Cir. 2006) ........................ 14

20

*Perry v. Proposition 8 Official Proponents,* 587 F.3d 947 (9th Cir. 2009) ....... 6, 14

21

*Prete v. Bradbury,* 438 F.3d 949 (9th Cir. 2006) .............................................. 6, 15

22

*S. Cal. Edison Co. v. Lynch,* 307 F.3d 794 (9th Cir. 2002)................................. 7, 16

23

*San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959)........................ 4

24

*Sw. Ctr. For Biological Diversity v. Berg,* 268 F.3d 810 (9th Cir. 2001)............... 6

25

*United States v. Alisal Water Corp.,* 370 F.3d 915 (9th Cir. 2004) .................. 6, 12

26

*United States v. City of Los Angeles,* 288 F.3d 391 (9th Cir. 2002) ................. 7, 16

27
28

**STATUTES**

4 CCR 15002(19) .................................................................................... 10

4 CCR 17801 ........................................................................................ 10

Cal. Bus. & Prof. Code § 26001 ........................................................ 4, 10

Cal. Bus. & Prof. Code § 26051.5 ......................................................... 10

**RULES**

Fed. R. Civ. P. 24(b)(1)(B) ...................................................................... 7

Fed. R. Civ. P. 24(b)(3) .................................................................... 7, 16

Plaintiff Ctrl Alt Destroy, Inc. ("CAD" or "Plaintiff"), by and through counsel, hereby responds to International Brotherhood Of Teamsters' ("Teamsters") Motion to Intervene ("Motion"):

## I.   <u>SUMMARY OF RESPONSE IN OPPOSITION</u>

This litigation is CAD's constitutional challenge to the imposition and enforcement of regulations that blatantly clash with federal labor law. These regulations, in direct conflict with activities protected, prohibited, or intentionally left unregulated by the National Labor Relations Act ("NLRA"), stand as clear examples of preemption. However, it is paramount to underscore what this litigation is unequivocally not about—the Teamsters, its members, or any legitimate interest the Teamsters espouse. The court must discern the critical distinction between the legitimate constitutional concerns raised by CAD and the Teamsters' bid for intervention, which appears to be motivated solely by self-serving financial considerations. The court's unwavering commitment to justice demands a judicious evaluation that safeguards CAD's constitutional rights while preventing the dilution of the case's essence with extraneous concerns unrelated to this litigation.

CAD is a cannabis retailer with its principal place of business at 8300 Center Drive, La Mesa, California 91942. (Complaint ¶ 5.) On April 26, 2024, CAD sued defendant Nicole Elliot in her official capacity as the Director of California's Department of Cannabis Control ("DCC") and defendant Rob Bonta in his official capacity as California's Attorney General for declaratory and injunctive relief to declare California Business and Professions Code section 26001 including 26001(ab) ("Section 26001") and 26051.5(a)(5)(A)-(E) ("Section 26051.5"), 4 CCR 15002(19), 4 CCR 15023(b), and 4 CCR 17801 (collectively the "LPA Sections") unconstitutional under the United States Constitution and that the LPA Sections are preempted under the NLRA. (Complaint ¶¶ 1, 6-7). [Doc. 1.]

On June 20, 2024, the Teamsters filed the Motion [Doc. 9], seeking to intervene by right, via an Answer in Intervention [Doc. 9-2] and Counterclaim [Doc. 9-3]. The Teamsters stated reasons for intervention fail to satisfy the elements required for intervention under Federal Rule of Civil Procedure, Rule 24. The Teamsters request to intervene by right under Rule 24(a)(2) and mention permissive intervention under Rule 24(b). The Rule 24(a)(2) request to intervene should be denied because the Teamsters have not sufficiently articulated facts to show (i) significant protectable interests; (ii) impairment of the ability to protect the significant protectable interests; and (iii) that the existing parties may not adequately represent the significant protectable interests. The Teamsters mention of permissive intervention is not a request for relief and fails to articulate the law or facts in the Motion's accompanying memorandum of law [Doc. 9-1] to demonstrate permissive intervention.

## II.      STATEMENT OF FACTS

### A.      The LPA Sections At Issue In This Litigation

California's cannabis regulatory scheme, referred to as MAUCRSA, is codified at California Business and Professions Code section 26000 et seq., and includes a detailed and comprehensive enforcement structure for violations of its provisions. (Complaint ¶ 11.) MAUCRSA's stated purpose is to protect the public safety with regard to cannabis products or, in other words, to regulate cannabis products in California. (Complaint ¶ 13.) MAUCRSA is administered and enforced by the DCC as set forth in California Code of Regulations, Title 4, 15000 et seq. as well as, at a minimum, Title 4, 17801. (Complaint ¶ 11.) The LPA Sections set forth when both medical and adult use cannabis licensees must enter into a Labor Peace Agreement. (Complaint ¶¶ 12, 14, 16-18.)

In 2022, California's governor signed AB 195, which included a provision requiring cannabis operators with 10 or more employees (rather than the previous 20) to provide a statement that the cannabis operator will enter into a Labor Peace

Agreement or demonstrate that it already entered into one beginning July 1, 2024. (Complaint ¶ 21.) AB 195 also created a procedure for any labor organization or any current or former employee of a licensed cannabis operator to file a complaint with the Agricultural Labor Relations Board ("ALRB") challenging the validity of the labor organization with whom the cannabis operator entered into a Labor Peace Agreement. (Complaint ¶ 22.)

On December 3, 2018, CAD obtained its first license. (Complaint ¶¶ 5, 39.) As part of its submittal to the DCC to obtain its license, CAD provided a notarized declaration that it would enter into a Labor Peace Agreement within 60 days of employing its twentieth employee. (Complaint ¶ 40.) By October 2022, CAD employed 20 or more employees. (Complaint ¶ 41.) On or around October 11, 2022, consistent with MAUCRSA, CAD entered into a Labor Peace Agreement with a union named Pro-Tech 33. (Complaint ¶¶ 42-43.) On July 10, 2023, the DCC sent an email to all licensees and applicants stating that "Agricultural Labor Relations Board [ALRB] has determined that Professional Technical Union, Local 33 [Pro-Tech 33] is not a bona fide labor organization [and] any labor peace agreements entered into by licensees with Pro-Tech 33 are null and void. These agreements can no longer be used to satisfy the requirement for licensees and applicants who must enter into a labor peace agreement." (Complaint ¶ 44.) If CAD refuses to enter into a Labor Peace Agreement, it will lose its right to do business in California. (Complaint ¶45.)

**B. The Applicable Federal Statute**

The LPA Sections constitute an attempt by Defendants to regulate CAD's labor relations in violation of the NLRA, which preempts such efforts. (Complaint ¶ 23.) The NLRA governs labor relations for all private sector employers. The NLRA contains exhaustive regulation for labor relations, including, but not limited to, collective bargaining, selection of representation, and the dispute resolution process. (Complaint ¶ 24.) Whether an employer is covered by the NLRA is

1    determined by the National Labor Relations Board ("NLRB"). (Complaint ¶ 25.)

2    The NLRB has exclusive jurisdiction to resolve disputes over whether and by

3    whom employees are represented for collective bargaining purposes. (Complaint ¶

4    25.)

5         Defendants may not adopt and enforce regulations that conflict with federal

6    labor law or that would have the effect of regulating aspects of labor-management

7    relations governed by those laws. (Complaint ¶ 26.) State or local government

8    actions that purport to regulate activities that are protected, prohibited, or

9    intentionally left unregulated by the NLRA are preempted. (*San Diego Bldg.*

10   *Trades Council v. Garmon*, 359 U.S. 236 (1959); *Int'l Ass'n of Machinists v. Wisc.*

11   *Employment Rel. Comm'n,* 427 U.S. 132 (1976).)

12        The LPA Sections impermissibly intrude into federally governed labor

13   relations under the NLRA by requiring CAD to enter into a Labor Peace

14   Agreement with a "bona fide" labor organization and authorizing the DCC

15   enforcement authority, to include license revocation, should CAD decline to do so.

16   (Complaint ¶ 27.) The LPA Sections also mandate that the Labor Peace

17   Agreement include a binding and enforceable provision prohibiting labor

18   organizations and its members from "…engaging in picketing, work stoppages,

19   boycotts, and any other economic interference…" (Section 26001). In the event

20   the labor organization and CAD are unable to agree to a Labor Peace Agreement,

21   or a dispute arises between CAD and a labor organization, there is no mechanism

22   by which the dispute will be settled. (Complaint ¶ 29.) In addition, although CAD

23   must enter into a Labor Peace Agreement, or risk its licensure, there is no

24   corresponding obligation of the labor organization to request a Labor Peace

25   Agreement (and thus agree to a no-strike provision), or to honor a request by CAD

26   to enter into a Labor Peace Agreement. (Complaint ¶ 30.)

27        These provisions impermissibly skew the "playing field" between labor and

28   CAD by giving unfettered leverage to a labor organization dealing with CAD.

(Complaint ¶ 31.) The LPA Sections have stripped CAD of all negotiating power as it must obtain a binding Labor Peace Agreement with a no strike provision, allowing the labor organization to withhold its agreement unless and until it obtains significant concessions. (Complaint ¶ 32.) Finally, the LPA Sections do not appear to provide any sanction against a labor organization that violates a no-strike provision entered into as part of a Labor Peace Agreement. CAD, on the other hand, faces the imposition of costs and other penalties by the DCC, including the loss of its right to do business altogether. (Complaint ¶ 33.)

### C. Teamsters' Facts In Support Of Intervention

CAD has separately objected to Exhibits 2 [Doc. 9-7] and 3 [Doc. 9-8] of the Teamsters' Request for Judicial Notice [Doc. 9-5] in support of this Motion beyond the fact that Exhibits 2 and 3 exist. However, should the Court consider these two exhibits, they do not support intervention.

On March 15, 2023, the Teamsters filed a complaint with California's ALRB, against Pro-Tech 33, relative to a different and unrelated Labor Peace Agreement between Pro-Tech 33 and a cannabis business named Three Habitat Consulting Palm Springs LLC. (Motion pg. 2, lines 8-15.) In this separate ALRB proceeding, the Teamsters sought to have Pro-Tech 33 determined to be a non bona fide union, which the ALRB did in June 2023. (Motion pg. 2, lines 16-18; pg. 3, lines 1-26.) The Teamsters spent $15,768 bringing the ALRB administrative challenge against Pro-Tech 33. The Teamsters state a nebulous willingness to enter into a Labor Peace Agreement with CAD for the first time in its motion. (Motion pg. 5, lines 1-2.)

The gist of the Teamsters' statement of facts supporting intervention can be summarized as follows: The Teamsters took issue with Pro-Tech 33; the Teamsters challenged Pro-Tech 33 in an ALRB proceeding; the Teamsters spent money to make the challenge; and the Teamsters are scolding CAD for exercising its fundamental right to petition the Court for relief from the LPA Sections.

1  Notably absent from the Teamsters' statement of facts is any reference to the

2  nexus between the offending LPA Sections and its ability to organize workers,

3  workers' rights, or contravention of the Teamsters' right to organize cannabis

4  businesses.

5              **III.   STANDARDS FOR RULE 24 INTERVENTION**

6          Rule 24 sets forth two types of nonparty intervention: (1) intervention as of

7  right under Rule 24(a); and (2) permissive intervention under Rule 24(b).

8          A party seeking to intervene as of right under Rule 24(a)(2) must meet four

9  requirements: (1) the applicant must timely move to intervene; (2) the applicant

10 must have a significantly protectable interest relating to the property or transaction

11 that is the subject of the action; (3) the applicant must be situated such that the

12 disposition of the action may impair or impede the party's ability to protect that

13 interest; and (4) the applicant's interest must not be adequately represented by

14 existing parties." (*Arakaki v. Cayetano,* 324 F.3d 1078, 1083 (9th Cir. 2003).)

15 Although Rule 24(a)(2) is construed broadly in favor of intervenors, the applicant

16 bears the burden of showing that each of the four elements is met. (*United States v.*

17 *Alisal Water Corp.,* 370 F.3d 915, 919 (9th Cir. 2004); *Prete v. Bradbury,* 438

18 F.3d 949, 954 (9th Cir. 2006).) Failure to satisfy even one of these elements

19 prohibits the applicant from intervening as of right. (*Freedom from Religion*

20 *Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011); *League of United*

21 *Latin Am. Citizens v. Wilson,* 131 F.3d 1297, 1302 (9th Cir. 1997); *Perry v.*

22 *Proposition 8 Official Proponents,* 587 F.3d 947, 950 (9th Cir. 2009) ("*Perry*").)

23 In deciding a motion to intervene, courts need not take as true allegations that are a

24 sham or frivolous. (*Sw. Ctr. For Biological Diversity v. Berg,* 268 F.3d 810, 820

25 (9th Cir. 2001).)

26         With respect to permissive intervention, Rule 24(b)(1)(B) provides "[o]n

27 timely motion, the court may permit anyone to intervene who . . . has a claim or

28 defense that shares with the main action a common question of law or fact." (Fed.

R. Civ. P. 24(b)(1)(B).) The court must also consider "whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." (Fed. R. Civ. P. 24(b)(3).) In other words, in the Ninth Circuit, "a court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." (*United States v. City of Los Angeles,* 288 F.3d 391, 403 (9th Cir. 2002); *Nw. Forest Res. Council v. Glickman* 82 F.3d 825, 839 (9th Cir. 1996).) "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." (*S. Cal. Edison Co. v. Lynch,* 307 F.3d 794, 803 (9th Cir. 2002).

The Teamsters have failed to demonstrate the right to intervene under either standard.

## A. The Teamsters' Request To Intervene As Of Right Under Rule 24(a)(2) Should Be Denied

For intervention as of right under Rule 24(a)(2), the Teamsters must satisfy each of the four requirements identified above. Despite the law's instruction to construe intervention broadly in favor of proposed intervenors, the Teamsters do not meet this burden and have failed to meet requirements (2)-(4). The Teamsters cannot satisfy requirement (2) because it has shown no significantly protectable interest; it cannot satisfy requirement (3) because disposition of the action does not impair or impede the Teamsters' ability to protect that interest; and it cannot satisfy requirement (4) because the Teamsters' interest is adequately represented by the DCC and AG.

> 1. Requirement 2: The Teamsters Have Not Demonstrated A Significantly Protectable Interest.

The Teamsters must demonstrate a "significantly protectable interest" in the lawsuit to merit intervention. (*Nw. Forest Res. Council,* 82 F.3d at 837.) To

1   demonstrate this interest, the Teamsters must establish that (1) the interest asserted

2   is protectable under some law, and (2) there is a relationship between the legally

3   protected interest and the claims at issue. *Id.* (internal quotation marks and

4   alteration omitted). The interest must be "direct, non-contingent, substantial and

5   legally protectable . . . ." (*Dilks v. Aloha Airlines,* 642 F.2d 1155, 1157 (9th Cir.

6   1981).) "An applicant generally satisfies the 'relationship' requirement only if the

7   resolution of the plaintiff's claims actually will affect the applicant." (*Donnelly v.*

8   *Glickman,* 159 F.3d 405, 410 (9th Cir. 1998) quoting *Montana v. U.S. Env't Prot.*

9   *Agency,* 137 F.3d 1135, 1141-42 (9th Cir. 1998).)

10         Ninth Circuit cases where the Teamsters have been found to have a

11   significantly protectable interest are dramatically distinguishable from this case.

12   For example, the Teamsters have been found to have a significantly protectable

13   interest in cases challenging its members' prevailing wages or misclassification of

14   its member employees as independent contractors. (*See e.g. California for a Safe*

15   *and Competitive Dump Truck Transportation v. Mendonca,* 152 F.3d 1184 (9th

16   Cir. 1988) ("*Mendonca*") (a protectable interest found in Teamster members

17   receiving the prevailing wage); *California Trucking Assn. v. Bonta,* 996 F.3d 644

18   (9th Cir. 2020) (a protectable interest found in the misclassification of Teamster

19   employees as independent contractors); and *Allied Concrete and Supply Co. v.*

20   *Baker*, 904 F.3d 1053 (9th Cir. 2018) (a protectable interest found in the payment

21   of prevailing wage to Teamster's members).)

22         Here, no such protectable interest exists and certainly not one related to the

23   invalidity of the LPA Sections. Rather than identifying a concrete protectable

24   interest, the Teamsters suggest the court *infer* a protectable interest from its desire

25   to stop "sham relationships" by ensuring Labor Peace Agreements are with a bona

26   fide labor organization (Motion pg. 7, lines 11-14), its representation of employees

27   in every major California city (Motion pg. 7, lines 15-16), and the fact they have

28

over 200 Labor Peace Agreements with California cannabis businesses (Motion pg. 7, lines 16-17.)

Because the Teamsters lack an identifiable protectable interest, the Teamsters include a variety of additional facts related to its interest in cannabis businesses but none related to an actual protectable interest that would be impacted by this litigation.  For example, the Teamsters proclaim its organization is "a leader in the industry and instrumental in representation of cannabis workers…" and having "…a particular interest in organizing and representing workers in the cannabis industry…." (Motion pg. 8, lines 13-16.) The Teamsters also contend the organization is charged with (1) protecting the rights and interests of workers, (2) engaging with employers and bargaining terms and conditions of employment for workers, and (3) engaging in labor relations with employers." (Motion pg. 8, lines 22-25.) These statements are an expression of the various activities the Teamsters perform for its existing members. These statements do not, however, establish an interest protectable under some law nor do they show a relationship between the legally protected interest and the claims here.  Rather, these statements are indirect, contingent, not legally protectable, and do not show how resolution of the Plaintiff's claims will in any way affect the Teamsters articulated interests.

This case does not challenge the Teamsters' ability to protect the rights and interests of workers generally or the Teamsters' members. It does not challenge a particular benefit its members currently receive.  In fact, this case does not affect the current members of the Teamsters in any way.  This case does not challenge the Teamsters' ability to engage with employers, like CAD, to bargain the terms of conditions of employment. This case does not challenge the Teamsters' ability to engage in labor relations activities with employers. A favorable resolution for CAD in no way prevents the Teamsters from continuing to engage with employers, enter into Labor Peace Agreements, or challenge sham unions.

1       The challenged LPA Sections are related only to the mandate that a

2  cannabis employer must enter into a Labor Peace Agreement regardless of whether

3  the employee(s) desire organization or have been approached by any labor

4  organization about organizing efforts.  In other words, this litigation does not

5  challenge the NLRA, the construct of unions, the benefits employees currently

6  receive, or the purported advantages that unions may provide to employees

7  (arguably all protectable interests of unions generally). Nothing in the LPA

8  Sections circumvent or impede the Teamsters' stated interest of organizing and

9  representing employees in compliance with all the laws and regulations

10  promulgated by the NLRA[1].

11       The Teamsters infer its ALRB access pursuant to California Business and

12  Professions Code section 26051.5, subdivision (a)(5)(D) is a protectable interest.

13  (Motion pg. 2 lines 8-15).  Under subdivision (a)(5)(D), any labor organization or

14  any current or former employee of the relevant licensee may file a complaint with

15  the ALRB that an organization is not a bona fide labor organization. This,

16  however, is not a protectable interest. Importantly, the Complaint does not

17  challenge the inappropriateness of ALRB jurisdiction. Even if it did, a challenge to

18  the ALRB's unconstitutionality would not divest the Teamsters of its ability to

19  challenge the validity of labor organizations via the NLRB and independent of the

20  LPA Sections. Under 29 U.S.C. Section 160, the NLRB has exclusive and broad

21  authority to prevent unfair labor practices e.g. to address illegitimate relationships

22  between employers and labor organizations and company sponsored unions. The

23  NLRB has a comprehensive system for investigating complaints, conducting

24  hearings, and enforcing orders through the U.S. court of appeals.

25

26

27

28

---

[1] Section 26001 defines Labor Peace Agreement as an agreement between a licensee [employer] and any bona fide labor organization. Section 26051.5 sets forth when an employer must enter into a Labor Peace Agreement as a condition of licensure. 4 CCR 15002(19), 4 CCR 15023(b), and 4 CCR 17801 are also specific to when an employer must sign a Labor Peace Agreement and disciplinary efforts that may occur if it does not.

Allowing intervention on the inferential claim of losing ALRB access would circumvent federal law and firmly established protocols and expand the scope of this litigation. Permitting the Teamsters to intervene on the argument of ALRB standing would necessarily expand the scope of CAD's challenge thereby potentially complicating and prolonging the resolution process and undermining the efficiency and effectiveness of the NLRB's adjudicative framework.

Given the NLRB is the established forum for challenging the legitimacy of labor organizations, it is unnecessary for the Teamsters to intervene in the current proceedings. Allowing intervention will convolute this case with extraneous state law issues and complicate the proceedings with unnecessary legal arguments and procedural delays.

This litigation is also distinguishable from the cases cited by the Teamsters related to a significantly protectable interest. In the cited cases, the protected interest related to employees who were union members and the Teamsters were seeking to protect interests in things like prevailing wages or employee misclassification. The significant interest in the cited cases arose from the union's role in advocating for its members and to some extent employees generally related to benefits the employees had at the time of the litigation. There is no union membership at the Labor Peace Agreement stage and no benefit to employees since the LPA is a private agreement between the union and the employer. In fact, in most instances the employee has no knowledge of the LPA because it is a state-mandated contract that the employer agrees to terms and conditions with a union or risk loss of license.

This case challenges the legislative predicate requirement mandated by the LPA Sections that cannabis businesses, e.g. the cannabis employers, must enter into a Labor Peace Agreement with express statutory provisions, in contravention of the NLRA and the U.S. Constitution. The LPA Sections impose explicit statutory mandates on employers prior to any organizing activities by a union like

1   the Teamsters. Put another way, the employee is not a union member at the Labor
2   Peace Agreement stage that requires protection by the Teamsters related to
3   prevailing wages, employee misclassification, or any other law the Teamsters may
4   seek to protect on its members' behalf.

5          This Motion is the Teamsters' backdoor attempt to recoup money it
6   voluntarily spent in the ALRB proceedings against Pro-Tech 33 and obtain
7   discovery related to Pro-Tech 33 that it was unable to obtain in the ALRB
8   proceedings.  The Teamsters' ability to voluntarily challenge unions with which
9   cannabis employers have already signed a Labor Peace Agreement is not a
10  significant protectable interest in this litigation, it is an economic monopoly
11  pursued by the Teamsters under the ALRB and irrelevant to the fundamental
12  unconstitutionality of the LPA Sections challenged in this proceeding.

13              2.      Requirement 3: The Teamsters Have Not Demonstrated
14                      Practical Impairment Of An Interest.

15         The Teamsters fail to analyze this requirement. All of the intervention
16  elements must be met and failure of any element requires denial. (*Freedom From
17  Religion Found, Inc. v. Geithner,* 644 F.3d at 841.) Given the Teamsters failure to
18  analyze this requirement in the Motion, it has failed to meet all of the elements for
19  intervention and thus intervention should be denied.

20         However, should the Court consider this requirement despite its absence in
21  the Motion, it is not met. Assuming the Teamsters have demonstrated a
22  significantly protectable interest, which it has not, disposition of this action does
23  not, as a practical matter, impair or impede the Teamsters ability to protect its
24  stated interests. In evaluating this requirement, the Court can consider alternative
25  means of redress and whether or not the stated interest is sufficiently related to the
26  litigation. (See*, e.g., United States v. Alisal Water Corp.*, 370 F.3d at 921) (no
27  impairment of rights when proposed intervenor had alternative means of redress).

28

In requirement two above (significantly protectable interest), the Teamsters identify its organization as "a leader in the industry and instrumental in representation of cannabis workers…" and having "…a particular interest in organizing and representing workers in the cannabis industry…" (Motion pg. 8, lines 13-16.) The Teamsters conclude the organization is charged with (1) protecting the rights and interests of workers, (2) engaging with employers and bargaining terms and conditions of employment for workers, and (3) engaging in labor relations with employers." (Motion pg. 8, lines 23-25.)

Disposition of this action favorable to Plaintiff, or a determination the LPA Sections are unconstitutional and preempted, does not impair or impede the Teamsters stated reasons in requirement two for intervention. Finding the LPA Sections unconstitutional and preempted does not impact the Teamsters ability to organize workers, bargain with employers, and engage in labor relations with employers. Whether or not the LPA Sections remain enforceable law, the Teamsters can continue, and will continue, to protect the rights and interest of workers under the NLRA by engaging with employers to bargain the terms and conditions of worker employment, and bring claims under the NLRB (the intended form of redress and an alternative means of redress). Further, invalidating the LPA Sections does not preclude the Teamsters ability to enter into Labor Peace Agreements with California cannabis businesses. The Teamsters stated purpose remains unchanged in that the organization remains committed to protecting the rights and interests of workers irrespective of the LPA Sections.

Moreover, the Teamsters do not seek intervention in this litigation to defend the worker. The Teamsters seek to intervene in this litigation to join the DCC and AG in protecting the unconstitutional mandate that forces cannabis employers, like CAD, into a contract of adhesion between the employer and the union. As discussed *supra¸* the LPA Sections are employer focused, not worker focused, and impose a contract obligation on the employer. The Teamsters silence on this

1   requirement is an admission that this requirement cannot be met, which means it

2   has not met all elements for intervention, and intervention should be denied.

3          3.      Requirement 4: The Teamsters' Interests Are Adequately

4                  Protected By Defendants.

5          The Court considers three factors in deciding whether a present party

6   adequately represents the interests of a prospective intervenor: (1) whether the

7   interest of a present party is such that it will undoubtedly make all of a proposed

8   intervenor's arguments; (2) whether the present party is capable and willing to

9   make such arguments; and (3) whether a proposed intervenor would offer any

10  necessary elements to the proceeding that other parties would neglect. (*Arakaki v.*

11  *Cayetano,* 324 F.3d at 1086). If the proposed intervenor's interest is "identical to

12  that of one of the present parties, a compelling showing should be required to

13  demonstrate inadequate representation." (*Id.* (citation omitted).)

14         "Where the party and the proposed intervenor share the same 'ultimate

15  objective,' a presumption of adequacy of representation applies." (*Perry,* 587 F.3d

16  at 951).  This presumption of adequacy is "nowhere more applicable than in a case

17  where the Department of Justice deploys its formidable resources to defend the

18  constitutionality of a congressional enactment." (*People ex rel Lockyer v. U.S.*,

19  450 F.3d 436, 444 (9th Cir. 2006).) For example, in *Oakland Bulk & Oversized*

20  *Terminal, LLC v. City of Oakland,* 960 F.3d 603 (9th Cir. 2020), intervention was

21  denied and the presumption of adequacy was discussed. In denying intervention,

22  the *Oakland Bulk* Court stated the Intervenors needed to make a "very compelling

23  showing" because: (1) a governmental entity (Oakland) was already acting on

24  behalf of its interests in the action and (2) Intervenors and Oakland shared the

25  same ultimate objective of upholding an ordinance. (*Oakland Bulk,* 960 F.3d at

26  620; *Arakaki v. Cayetano*, 324 F.3d at 1086 (a "very compelling showing" is

27  required to rebut a "presumption of adequacy" when "the government is acting on

28  behalf of a constituency it represents" or when the applicant and existing party"

have the same ultimate objective"); *Prete v. Bradbury,* 438 F.3d at 951 ("[a]lthough the intervenors, as chief petitioner for Measure 26 and one of its main supporters, had a significant protectable interest that could have impeded or impaired by an adverse judgment, the district court erred in allowing them to intervene since they had not met their burden of showing that their interests were not adequately represented by the State").)

Here, the DCC, AG, and the Teamsters have the same interest in this litigation, to defend the constitutionality, and therefore the enforceability, of the LPA Sections. Given this identical interest, the Teamsters must make a "very compelling showing" because: (1) a governmental entity (DCC and AG) is already acting on behalf of its interests in the action to uphold the LPA Sections; and (2) the Teamsters, the DCC, and the AG, share the same ultimate objective of upholding the LPA Sections. They have failed to do so. The fact that both the DCC and AG have filed a motion to dismiss further supports the ultimate shared objective of upholding the LPA Sections.

The Teamsters' entire analysis of this requirement is inadequate, generalized, and unintelligible. The Teamsters generally state the organization's interests are inadequately represented because the DCC and AG will not make the Teamsters' arguments, given their interests in regulating the legal cannabis market in the state of California differ from unions' interests in representing cannabis employees' interests in organizing workers, and in their terms and working conditions of employment. (Motion pg. 9, lines 25-27; pg. 10, lines 1-2.) The Teamsters also argue the DCC and AG's interests are not identical to the Teamsters' such that they will "undoubtedly" make all of the Teamsters' arguments. (Motion pg. 10, lines 3-4.) The Motion is devoid of a single specific example or statement of how these broad assertions practically apply to this litigation. There is no example of what the DCC or the AG could do, or would not

1  do, to defend the litigation that the Teamsters would do, and cannot do, if
2  intervention is denied.

3      Rule 24 is not a vehicle to grant a party access to the courts based on
4  speculation that the state will not adequately represent the unidentified interests of
5  a proposed intervenor.  Nor should it be a mechanism for the Teamsters to back-
6  door a counter-claim against CAD that it would not be permitted to bring in
7  federal court. [Doc. 9-3]. Because there is a presumption of adequacy and because
8  the Teamsters have failed to make even a modicum of a showing its interests will
9  be inadequately protected by the DCC and/or the AG, the request to intervene
10  should be denied.

11  **B. No Rule 24(b) Permissive Intervention**

12      Rule 24(b)(1)(B) provides "[o]n timely motion, the court may permit
13  anyone to intervene who . . . has a claim or defense that shares with the main
14  action a common question of law or fact." (Fed. R. Civ. P. 24(b)(1)(B).) The court
15  must also consider "whether intervention will unduly delay or prejudice the
16  adjudication of the original parties' rights." (Fed. R. Civ. P. 24(b)(3).  In the Ninth
17  Circuit, "a court may grant permissive intervention where the applicant for
18  intervention shows (1) independent grounds for jurisdiction; (2) the motion is
19  timely; and (3) the applicant's claim or defense, and the main action, have a
20  question of law or a question of fact in common." (*United States v. City of Los*
21  *Angeles* 288 F.3d 391 at 403 ; *Nw. Forest Res. Council*, 82 F.3d at 839.)  "Even if
22  an applicant satisfies those threshold requirements, the district court has discretion
23  to deny permissive intervention." (*Donnelly v. Glickman*, 159 F.3d at 412; *S. Cal.*
24  *Edison Co. v. Lynch*, 307 F.3d at 803.)

25      The Teamsters make reference to permissive intervention but, like
26  requirement 3, fail to analyze it in the memorandum of law. For this reason,
27  permissive intervention should be denied.

28

Assuming the Teamsters had appropriately analyzed permissive intervention, it is not warranted. The DCC and AG are defending the same LPA Sections the Teamsters would defend by intervening as a defendant. Permissive intervention will not contribute to the full development of the factual issues in this case nor the equitable adjudication of the legal questions. The factual issues relate to CAD as an employer subject to the LPA Sections and the legal questions related to the unconstitutionality of the LPA Sections and preemption by the NLRA. Further, the Teamsters' attempt to intervene by filing a Counterclaim against CAD is prejudicial as it will expand the issues beyond the Constitutionality and enforceability of the LPA sections. [Doc. 9-3.] The Teamsters proposed Counterclaim seeks attorneys' fees from CAD under a California statute unrelated to the claims in the Complaint. The only result of intervention by the Teamsters would be to convolute this case with extraneous state law issues and complicate the proceedings with unnecessary legal arguments and procedural delays.

## IV.    CONCLUSION

In the realm of legal intervention, the Teamsters' plea for inclusion under Rule 24(a)(2) and Rule 24(b) falls short and must be unequivocally rejected. The stringent requisites laid out in Rule 24(a)(2) demand not only a significantly protectable interest but also a practical impairment of that interest and a convincing argument for inadequate representation. The Teamsters stumble at each hurdle, unable to establish a direct, legally safeguarded interest germane to the current dispute. Its generalized contentions about curbing "sham relationships" and their engagement with cannabis businesses fail to align with the specific challenges raised in this litigation concerning the constitutionality of the LPA Sections. Moreover, the Teamsters falter in demonstrating that the resolution of this action would tangibly impede its ability to safeguard any identified interest, or that the current representatives are insufficiently capable of championing their purported concerns.

1          The Teamsters' pursuit of permissive intervention under Rule 24(b) is

2    equally unfounded. Its conspicuous oversight in analyzing this avenue within their

3    memorandum underscores the absence of a compelling case for intervention. The

4    committed defense mounted by the DCC and AG, already aligned with the

5    Teamsters in championing the constitutionality and enforceability of the LPA

6    Sections, leaves little room for the Teamsters to claim a unique vantage point. The

7    introduction of a Counterclaim seeking attorneys' fees unrelated to the core

8    constitutional issues further muddies the waters, threatening to unnecessarily

9    complicate and expand the scope of the litigation. In the face of these glaring

10   deficiencies, the Court is urged to exercise its discretionary authority and firmly

11   rebuff the Teamsters' plea for intervention, underscoring the principle that

12   intervention is not an automatic entitlement but a privilege contingent on meeting

13   stringent criteria.

14   DATED: July 12, 2024          AUSTIN LEGAL GROUP, APC.

15                                                By:

16                                                /s/ Gina M. Austin

17                                                _____

18                                                GINA M. AUSTIN
                                                  Attorney for Plaintiff Ctrl Alt Destroy Inc.

19   DATED: July 12, 2024          AUSTIN LEGAL GROUP, APC.

20                                                By:

21

22                                                /s/ Tamara Leetham Rozmus

23                                                _____

24                                                TAMARA LEETHAM ROZMUS
                                                  Attorney for Plaintiff Ctrl Alt Destroy Inc.

25

26

27

28