1
2
3
4                    UNITED STATES DISTRICT COURT
5                  SOUTHERN DISTRICT OF CALIFORNIA
6

| | |
|---|---|
| 7   CTRL ALT DESTROY,<br><br>8                    Plaintiff,<br><br>9   v.<br><br>10  NICOLE ELLIOTT, in her official<br>capacity as Director of the State of<br>11  California's Department of Cannabis<br>Control; ROB BONTA, in his official<br>12  capacity as Attorney General of the State<br>13  of California, and DOES 1–10, inclusive,<br><br>14                    Defendants.<br>15<br>16<br>17 | Case No.:  24-CV-753 TWR (AHG)<br><br>**ORDER (1) GRANTING<br>DEFENDANTS' MOTION TO<br>DISMISS; (2) DISMISSING WITH<br>PREJUDICE PLAINTIFF'S<br>COMPLAINT; AND (3) DENYING<br>AS MOOT (a) DEFENDANTS'<br>REQUEST FOR JUDICIAL NOTICE,<br>(b) PROPOSED INTERVENOR<br>DEFENDANT'S MOTION TO<br>INTERVENE, AND (c) PROPOSED<br>INTERVENOR DEFENDANT'S<br>REQUEST FOR JUDICIAL NOTICE**<br><br>(ECF Nos. 6, 9) |

18
19      Presently before the Court are the Motion to Dismiss ("Mot. to Dismiss," ECF No. 6)
20  and Request for Judicial Notice ("Defs.' RJN," ECF No. 6-1) filed by Defendants Rob
21  Bonta, in his Official Capacity as Attorney General of California ("Attorney General"),
22  and Nicole Elliott, in her Official Capacity as Director of the Department of Cannabis
23  Control ("Director"), as well as Plaintiff Ctrl Alt Destroy's Responses in Opposition to
24  Defendants' Request for Judicial Notice ("Opp'n to Defs.' RJN," ECF No. 7) and in
25  Opposition to the Motion to Dismiss ("Opp'n to Mot. to Dismiss," ECF No. 8) and
26  Defendants' Replies in Support of their Request for Judicial Notice ("Defs.' RJN Reply,"
27  ECF No. 11-1) and in Support of the Motion to Dismiss ("Defs.' Mot. to Dismiss Reply,"
28  ECF No. 11).

Also before the Court are Proposed Intervenor Defendant International Brotherhood of Teamsters' ("IBT") Motion to Intervene ("Mot. to Intervene," ECF No. 9) and Request for Judicial Notice ("IBT's RJN," ECF No. 9-5), as well as Plaintiff's Responses in Opposition to the Motion to Intervene ("Opp'n to Mot. to Intervene," ECF No. 12) and in Opposition to IBT's Request for Judicial Notice ("Opp'n to IBT's RJN," ECF No. 13) and IBT's Reply in Support of the Motion to Intervene ("IBT's Reply," ECF No. 14).

Having carefully considered the Complaint ("Compl.," ECF No. 1), the Parties' arguments, the record, and the relevant law, the Court **GRANTS** Defendants' Motion to Dismiss, **DENIES AS MOOT** Defendants' Request for Judicial Notice, **DENIES AS MOOT** IBT's Motion to Intervene, and **DENIES AS MOOT** IBT's Request for Judicial Notice.

**BACKGROUND**

## I.    Factual Background[1]

### A.    *Plaintiff's Business*

Plaintiff is "a retailer of cannabis" and is licensed pursuant to California law to engage in commercial cannabis activity. (Compl. ¶ 5.)  Although Plaintiff withholds the precise details of its enterprise—such as whether it retails cannabis for recreational or medicinal use—Plaintiff submits that it obtained its first temporary license in December 2018 and that it converted its temporary license into an annual license in June 2022. (Compl. ¶ 39.)  The scale of Plaintiff's operation is equally obscure; Plaintiff discloses only that "[b]y October 2022, [it] employed 20 or more employees," (Compl. ¶ 41).

### B.    *The LPA Sections*

Plaintiff brings the instant action to unburden itself from certain licensing requirements established by California law and enforced by the State's Department of

---

[1]    For purposes of Defendants' Motion to Dismiss, the facts alleged in Plaintiff's Complaint are accepted as true.  *See Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

Cannabis Control ("DCC").  (*See* Compl. ¶¶ 1–2, 17, 19, 23–27, 47.)  Specifically, Plaintiff objects to several statutory provisions (the "LPA Sections") that require it to enter into a "labor peace agreement" with a "bona fide labor organization" to preserve its right to conduct its cannabis-related business in California.  (*See* Compl. ¶¶ 1, 12, 17, 19, 21, 28.)

### 1.  *Labor Peace Agreement*

To acquire a commercial cannabis license in California, an applicant with twenty or more employees must either enter into a labor peace agreement or agree to enter into a labor peace agreement.[2]  Cal. Bus. & Prof. Code § 26051.5(a)(5)(A)(i).  In the context of California's commercial cannabis regulatory framework, a "labor peace agreement" possesses five distinctive features.[3]  First, it is an agreement between an applicant for a commercial cannabis license and a "bona fide labor organization."  Cal. Bus. & Prof. Code § 26001(ac).  Second, it "prohibit[s] labor organizations and members from engaging in picketing, work stoppages, boycotts, and any other economic interference."  *Id.*  Third, it prohibits the applicant from "disrupt[ing] efforts by the bona fide labor organization to communicate with, and attempt to organize and represent, the applicant's employees."  *Id.*  Fourth, it "provide[s] a bona fide labor organization access at reasonable times to areas in which the applicant's employees work, for the purpose of meeting with employees to discuss their right to representation, employment rights under state law, and terms and

/ / /

---

[2]      "If at the time of licensure, a licensee employed fewer than 20 employees and later employs 20 or more employees," the licensee must comply with the labor peace agreement requirement "within 60 days of employing 20 or more employees[.]"  Cal. Code Regs. tit. 4, § 15023(b).

[3]      Labor peace agreements are not unique to California's regulation of its commercial cannabis industry.  *See, e.g., Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038 (9th Cir. 2020) (considering city's requirement that municipal waste collection franchisees enter into a labor peace agreement); *Airline Serv. Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074 (9th Cir. 2017) (airline service providers); *DePaul Indus., Inc. v. City of Portland*, No. 3:21-CV-01792-HL, 2022 WL 3683799 (D. Or. Aug. 25, 2022) (contractors providing janitorial, unarmed security, or industrial laundry services for the city).

conditions of employment." *Id.* Fifth, it does not "mandate a particular method of election or certification of the bona fide labor organization." *Id.*

The purpose of requiring a labor peace agreement is multifaceted. California Business and Professions Code § 26001(ac) states that it "protects the state's proprietary interests." Additionally, Defendants suggest that the mandate is part of California's effort to regulate an emerging commercial cannabis industry that "[f]or decades, . . . operated in California without either federal or state regulation—and . . . was plagued by labor exploitation issues[.]" (*See* Mot. to Dismiss at 30:22–25.) Although "[i]t might seem at first glance that a labor peace agreement would be detrimental to employees' interests because it deprives them of labor rights[, i]n practice, [] if an employer may not operate without such an agreement, the employer may need to give benefits to its employees" to induce the labor organization to enter the agreement. *Airline Serv. Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074, 1077 (9th Cir. 2017).

### 2. *Bona Fide Labor Organization*

One of the fundamental features of a labor peace agreement is that it must be consummated between the commercial cannabis licensee and a "bona fide labor organization." Cal. Bus. & Prof. Code § 26001(ac). In the context of the LPA Sections, a "labor organization" is an "organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists, in whole or in part, for the purpose of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work for employees." Cal. Bus. & Prof. Code § 26051.5(a)(5)(E)(ii).

By filing a complaint with California's Agricultural Labor Relations Board ("ALRB"), any current employee of the licensee, former employee of the licensee, or labor organization can challenge that a labor organization is *not* a "bona fide" labor organization. Cal. Bus. & Prof. Code § 26051.5(a)(5)(D)(i). Upon receiving such a complaint, the ALRB must determine "whether the entity is a bona fide labor organization and issue a report with its findings[.]" Cal. Bus. & Prof. Code § 26051.5(a)(5)(D)(ii). If the ALRB determines

that an entity is not a bona fide labor organization, all labor peace agreements with that entity "shall be null and void."  Cal. Bus. & Prof. Code § 26051.5(a)(5)(D)(iii).   All licensees that signed labor peace agreements with that entity must enter into a new labor peace agreement with a bona fide labor organization within "a reasonable time period, not to exceed 180 days."  *Id.*

### 3.    Enforcement of the LPA Sections

Entering into a labor peace agreement, as well as complying with the terms of that agreement, is a condition of licensure under the LPA Sections.  Cal. Bus. & Prof. Code § 26051.5(a)(5)(A)–(B).   If a commercial cannabis licensee violates the LPA Sections—including by failing to enter into or abide by a labor peace agreement—the DCC may take "disciplinary action" against the licensee by imposing a fine, placing the licensee on probation, or suspending or revoking its license.  Cal. Bus. & Prof. Code § 26031(a); Cal. Code Regs. tit. 4, §§ 17801, 17801.1, 17809.   Thus, for example, a commercial cannabis licensee risks incurring fines or losing its license if it fails to timely enter into a new labor peace agreement once the ALRB determines that the entity that the licensee previously signed its labor peace agreement with is not a bona fide labor organization.

## C.    Application of the LPA Sections to Plaintiff

By October 2022, Plaintiff's commercial cannabis business "employed 20 or more employees."  (Compl. ¶ 41.)  To comply with the LPA Sections, Plaintiff signed a labor peace agreement with an entity named Professional Technical Union, Local 33 ("Pro-Tech 33") and provided a copy of the agreement to the DCC.  (Compl. ¶¶ 42–43.)  The DCC renewed Plaintiff's commercial cannabis license in June 2023.  (Compl. ¶ 39.)

IBT, however, filed a complaint with the ALRB alleging that Pro-Tech 33 was not a "bona fide labor organization" pursuant to the LPA Sections.[4]  (*See* ECF No. 9-1 ("IBT's

---

[4]    Specifically, IBT challenged a labor peace agreement between Pro-Tech 33 and Three Habitat Consulting Palm Springs LLC, "a business licensed to conduct commercial cannabis activity in California."  (IBT's Mem. at 2:9–13.)

Mem.") at 2:8–15.)   The ALRB found that Pro-Tech 33 was not a bona fide labor organization, (IBT's Mem. at 3:5–7), and notified Plaintiff of this finding on July 10, 2023, (Compl. ¶ 44).  As a result, Plaintiff's labor peace agreement with Pro-Tech 33 is null and void, and Plaintiff must enter into a new labor peace agreement.  (Compl. ¶¶ 44–45.) Otherwise, Plaintiff will "lose its right" to conduct its commercial cannabis business in California.  (Compl. ¶ 45.)

## II.   Procedural History

On April 26, 2024, Plaintiff filed its Complaint, which asserts that the LPA Sections (1) violate the Equal Protection Clause, (2) infringe Plaintiff's right to free speech under the First Amendment, (3) are unconstitutionally vague, and (4) are preempted by the National Labor Relations Act ("NLRA").  (Compl. ¶¶ 51–54, 57–58.)  Plaintiff requests that the Court declare the LPA Sections unconstitutional and enjoin Defendants from enforcing them.  (Compl. at 15:12–16:2.)

Defendants moved the Honorable Linda Lopez to dismiss the Complaint on May 29, 2024.  (*See* Mot. to Dismiss.)  Defendants also requested that the Court take judicial notice of the decision in which the ALRB found that Pro-Tech 33 is not a bona fide labor organization.  (*See* Defs.' RJN.)  IBT filed its Motion to Intervene on June 20, 2024, (*see* Mot. to Intervene), and requested that the Court take judicial notice of (1) portions of the IBT Constitution, (2) the decision in which the ALRB found that Pro-Tech 33 is not a bona fide labor organization, and (3) the Report and Recommendation in which the ALRB's General Counsel recommended that the ALRB find that Pro-Tech 33 is not a bona fide labor organization, (*see* IBT's RJN).  Plaintiff opposed both Motions, (*see* Opp'n to Mot. to Dismiss; Opp'n to Mot. to Intervene), as well as both Defendants' and IBT's Requests for Judicial Notice, (*see* Opp'n to Defs.' RJN; Opp'n to IBT's RJN).

Pursuant to Civil Local Rule 40.1, the "Low-Number" Rule, the matter was transferred to the undersigned on December 10, 2024, due to the matter's substantial similarities to Case No. 23-cv-01924-TWR-AHG.  (*See* ECF No. 16.)  The Court held a hearing on both Motions on February 20, 2025.  (*See* ECF No. 18.)

**MOTION TO DISMISS**

# I.  Legal Standards

## A.    Rule 12(b)(1)

A party may challenge the court's subject-matter jurisdiction through a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See* Fed. R. Civ. P. 12(b)(1); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Because "[f]ederal courts are courts of limited jurisdiction," "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Consequently, "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White*, 227 F.2d at 1242.  "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

"A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* (citing *Safe Air for Everyone*, 373 F.3d at 1039; *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).  "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof[]'" and "prov[e] by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.* (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010); *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012)).  "With one caveat, if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself."

*Id.* at 1121–22 (citing *Safe Air for Everyone*, 373 F.3d at 1039–40; *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Thornhill Publ'g*, 594 F.2d at 733). "The caveat is that a court must leave the resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim." *Id.* at 1122 n.3 (citing *Safe Air for Everyone*, 373 F.3d at 1039–40; *Augustine*, 704 F.2d at 1077).

### B.    Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

## II.    Analysis

Defendants assert that the Court should not grant the equitable relief requested by Plaintiff because to do so would directly facilitate conduct which is clearly illegal under federal law.[5]  (Mot. to Dismiss at 19:13–21:12.)  For the reasons set forth below, the Court agrees with Defendants.

### A.    The "Unclean Hands" Doctrine

The doctrine of unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted."  *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989); *see Hall v. Wright*, 240 F.2d 787, 794–95 (9th Cir. 1957) ("Under the 'clean hands' doctrine, one who does not come into equity with clean hands, and keep them clean, must be denied all relief, whatever may have been the merits of his claim.").  As the Supreme Court has made clear, the "unclean hands" doctrine dictates that "a federal court should not, in an ordinary case, lend its judicial power to a plaintiff who seeks to invoke that power for the purpose of consummating a transaction in clear violation of the law."  *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944).  Relatedly, a federal district court's ability to utilize its equitable powers to afford a litigant relief is foreclosed when doing so would be contrary to the laws duly enacted by Congress.  *See U.S. v. Oakland Cannabis Buyer's Co-op*, 532 U.S. 483, 498 (2001) ("[A]

---

[5]      Both Parties agree that the Complaint demands equitable relief.  (*See* ECF No. 19 ("Hearing Tr.") at  4:7–9; Mot. to Dismiss at 19:17–19, n.5.)  The equitable relief that Plaintiff seeks—the removal of a costly licensing requirement—will allow Plaintiff to more easily manufacture, distribute, and sell cannabis in California.  (*See* Compl. ¶¶ 46–48; Hearing Tr. at 6:21–7:1.)

court sitting in equity cannot 'ignore the judgment of Congress, deliberately expressed in legislation.'" (quoting *Virginian Ry. Co. v. Ry. Emps.*, 300 U.S. 515, 551 (1937))).

### B.    Plaintiff's Business Violates Federal Law

Plaintiff is an admitted "retailer of cannabis," and it is uncontested that the singular purpose of Plaintiff's for-profit business is the distribution of marijuana. (Compl. ¶ 5.) Thus, an analysis of the applicability of the unclean hands doctrine must begin with the axiomatic recognition that Plaintiff and its employees have been, currently are, and will likely continue to be, engaged in ongoing violations of multiple provisions of federal law. *See* 21 U.S.C. § 841(a)(1) (proscribing the manufacture of marijuana, the possession with intent to distribute marijuana, and the distribution of marijuana); 21 U.S.C. § 846 (proscribing participating in a conspiracy to manufacture marijuana, possess with intent to distribute marijuana and/or distribute marijuana); 21 U.S.C. § 856 (proscribing maintaining a drug-involved premises).[6] Because it is a business which exists solely for the purpose of making money through repeated and ongoing violations of federal law, Plaintiff comes before the Court seeking equitable relief with unclean hands.

The Court's conclusion regarding Plaintiff's pervasive violations of federal law and resulting unclean hands is unaffected by the fact that "[b]oth the legislative and executive branches of the federal government . . . appear disquieted by the CSA's marijuana-based

------

[6]    Depending on the volume of Plaintiff's marijuana sales and the gross receipts derived from the sale of marijuana during any twelve-month period in which Plaintiff's business has operated, it is possible that the principal administrator(s), organizer(s) or leader(s) of Plaintiff's business are engaged in a continuing criminal enterprise under 21 U.S.C. § 848. A violation of that statutory provision carries a mandatory-minimum term of twenty years imprisonment. It is also likely that Plaintiff and its employees are engaged in ongoing violations of additional federal laws, to include: 21 U.S.C. § 843(b) (the use of a communication facility to commit a felony controlled substance offense); 21 U.S.C. § 854 (the investment of illicit drug proceeds); 18 U.S.C. § 1956 (laundering of monetary instruments); and 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity). At the hearing on Defendants' Motion to Dismiss, Plaintiff's counsel agreed that Plaintiff's "business itself operates in violation of federal criminal law" and that "the ultimate harm suffered by the plaintiff would be the economic loss, that is, it would be a less profitable business." (Hearing Tr. at 5:10–13, 6:21–7:1.)

prohibitions." *Peridot Tree, Inc. v. City of Sacramento*, 94 F.4th 916, 923 (9th Cir. 2024). Indeed, if the executive branch is truly "disquieted," then it has the ability to reschedule marijuana; if the legislature is "disquieted," then it can change the law.  Until either of those co-equal branches of government exercises its constitutional authority to amend Title 21 of the United States Code, this Court has no discretion to ignore "the CSA's marijuana-based prohibitions" (i.e., the laws), regardless of the current popularity of those laws.[7]

### C.    Plaintiff's Response to the Unclean Hands Doctrine

Plaintiff fails to meaningfully address either the applicability or the merits of Defendants' unclean hands argument.  Rather, Plaintiff conflates the unclean hands doctrine with the doctrine of abstention and therefore argues that *Peridot Tree, Inc. v. City of Sacramento*, 94 F.4th 916 (9th Cir. 2024) is controlling authority that the Court must follow.  (*See* Opp'n to Mot. to Dismiss at 13:4.)  In *Peridot Tree*, the Ninth Circuit held that the district court improperly relied on the abstention doctrine in declining to exercise jurisdiction over a challenge to California's cannabis licensing regulations.  *Id.* at 932.  A fundamental difference exists, however, between declining to exercise jurisdiction over a claim—as the district court did in *Peridot Tree*—and dismissing a Complaint because the equitable relief that the Complaint requests will facilitate a violation of federal law.  Here, Defendants request that the Court do the latter.  (*See* Mot. to Dismiss at 19:9; *see also* Hearing Tr. at 14:4–8.)  Therefore, *Peridot Tree* is unhelpful to the evaluation of Defendants' unclean hands argument.

---

[7]    It is worth noting that district court judges routinely hold individuals on federal supervised release and probation accountable for violating federal marijuana laws.  Federal law requires that a sentencing court impose the following mandatory conditions of probation and supervised release: (1) "That the defendant not commit another federal, state, or local crime"; (2) "That the defendant not unlawfully possess a controlled substance"; and (3) "That the defendant refrain from any unlawful use of a controlled substance and submit to" regular drug tests.  18 U.S.C. §§ 3563(a), 3583(d).  Because cannabis is a federally controlled substance—the possession of which is a federal crime—individuals face *mandatory* revocation of supervised release and a *mandatory* term of imprisonment for possessing or using it.  *See* 18 U.S.C. § 3583(g).  The fact that individuals in the federal criminal justice system routinely face punishment for marijuana-related offenses belies any argument that Plaintiff's violations of the federal marijuana laws should somehow be overlooked or are irrelevant to the Court's unclean hands analysis.

### D.    The "Substantial Public Interest" Exception

Plaintiff does invoke the "substantial public interest" exception to the unclean hands doctrine.  Specifically, Plaintiff argues that the Court should not apply the unclean hands doctrine because doing so will permit Defendants to "act with impunity and disregard Constitutional rights and federal law on labor relations because [Plaintiff] sells cannabis[.]" (*See* Opp'n to Mot. to Dismiss at 17:27–18:1; *see also* Hearing Tr. at 18:20–24.)  Although "the clean hands doctrine should not be strictly enforced when to do so would frustrate a substantial public interest," *Northbay Wellness*, 789 F.3d at 960 (quoting *E.E.O.C. v. Recruit U.S.A., Inc.*, 939 F.2d 746, 753 (9th Cir. 1991)), that exception does not apply here.

This case does not involve a substantial public interest because the State has not significantly interfered with Plaintiff's federal rights.[8]  Instead, the LPA Sections are a

---

[8]    The Complaint alleges that the LPA Sections (1) violate the Equal Protection Clause, (2) infringe Plaintiff's right to free speech under the First Amendment, (3) are unconstitutionally vague, and (4) are preempted by the NLRA.  (Compl. ¶¶ 51–54, 57–58.)  All of these claims are meritless.

First, Plaintiff's Equal Protection claims fail because the LPA Sections easily pass rational basis review.  Because Plaintiff does not allege that the LPA Sections create suspect classifications, (*see* Opp'n to Mot. to Dismiss at 26:7–27:6), Plaintiff must "negate 'every conceivable basis which might support' such disparate treatment."  *Olson v. California*, 104 F.4th 66, 77 (9th Cir. 2024) (quoting *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 685 (2012)).  Given that the State is concerned about labor exploitation in the cannabis industry, (*see* Mot. to Dismiss at 30:22–25), the legislature may have enacted the LPA Sections to provide additional protections to cannabis workers.  Furthermore, the LPA Sections state that a labor peace agreement "protects the state's proprietary interests," Cal. Bus. & Prof. Code § 26001(ac); therefore, the LPA Sections guard against economic disruption.  These interests satisfy rational basis review.

Second, Plaintiff's First Amendment claims fail.  The LPA Sections do not impose unconstitutional content-based prior restraints because the requirement that Plaintiff not disrupt unionization efforts does not regulate protected speech, *see NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617–18 (1969) (holding that "interference, restraint or coercion of employees in the exercise of their right to self-organization" is "without the protection of the First Amendment"), and the requirement that Plaintiff permit a bona fide labor organization to access areas in which Plaintiff's employees work regulates Plaintiff's conduct, not its speech, *see Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 60 (2006) (holding that a law that required schools to provide access to U.S. military recruiters regulated conduct, not speech).  Additionally, the LPA Sections do not impose unconstitutional conditions on Plaintiff's right to free speech because the statutes do not regulate protected speech, *see Gissel*, 395 U.S. at 617–18, and Plaintiff has not identified a legitimate government benefit of which the LPA Sections deprive Plaintiff (the "benefit" in this case is a license to commit a federal crime).

Third, the LPA Sections are not unconstitutionally vague.  "In reviewing a business regulation for facial vagueness, [] the principal inquiry is whether the law affords fair warning of what is proscribed."

reasonable attempt to regulate a newly legalized commercial industry that "[f]or decades, . . . operated in California without either federal or state regulation—and . . . was plagued by labor exploitation issues[.]"  (*See* Mot. to Dismiss at 30:22–25.)  Were California to enforce cannabis licensing regulations that arbitrarily or egregiously violated the Constitution, the "substantial public interest" exception may obligate a federal court to interpose itself.  But that is simply not the case here.

## E.    Support from Other Federal Courts

The Court's conclusion that the unclean hands doctrine bars Plaintiff's claims finds support in the decisions of other federal courts.  Although, to the Court's knowledge, no federal court has considered a challenge to a requirement that commercial cannabis licensees sign a labor peace agreement, numerous district courts—including multiple

---

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 503 (1982).  "[T]he standard for fair notice is especially low in cases, like this one, involving civil statutes regulating economic activities.  Such laws are only void for vagueness if they create a standard 'so vague and indefinite as really to be no rule or standard at all.'"  *Fed. Trade Comm'n v. Kochava Inc.*, 671 F. Supp. 3d 1161, 1177 (D. Idaho 2023) (quoting *Boutilier v. Immigr. & Naturalization Serv.*, 387 U.S. 118, 123 (1967)).  The LPA Sections provide definitions for "labor peace agreement" and "bona fide labor organization."  Cal. Bus. & Prof. Code § 26001(ac); Cal. Bus. & Prof. Code § 26051.5(a)(5)(E)(ii).  Although these definitions "are no models of precision, they do not qualify as vague."  *See Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000) (rejecting claim that the terms "readily achievable" and "disability" were unconstitutionally vague).  Additionally, the omission of a dispute resolution process from the LPA Sections is of no consequence.  Whether the parties agree to a dispute resolution process is plainly outside the scope of the LPA Sections.  *See id.* at 836 ("The fundamental rationale underlying the vagueness doctrine is that due process requires a statute to give adequate notice of its scope.").

Fourth, the NLRA does not preempt the LPA Sections under either *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon ("Garmon")*, 359 U.S. 236 (1959), or *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wis. Emp. Rels. Comm'n ("Machinists")*, 427 U.S. 132, 144 (1976).  *Garmon* preemption is inapplicable because the LPA Sections touch upon "interests so deeply rooted in local feeling and responsibility" that "it [can]not be inferred that Congress intended to deprive the state of the power to act[.]"  *See Loc. 926, Int'l Union of Operating Eng'rs, AFL-CIO v. Jones*, 460 U.S. 669, 676 (1983)).  By enacting the CSA, Congress plainly articulated "the federal interest in *eliminating* commercial transactions[,]" instead of regulating them.  *See Gonzales v. Raich*, 545 U.S. 1, 19 (2005) (emphasis added).  Similarly, *Machinists* preemption does not apply because Congress has clarified that it does *not* intend to leave the cannabis industry "to be controlled by the free play of economic forces."  *See Machinists*, 427 U.S. at 144.  Rather, Congress enacted the CSA and declared that every commercial cannabis transaction is illegal under federal law, thereby eliminating the federal cannabis market.  *See* 21 U.S.C. § 841(a).

courts in the Ninth Circuit—have held that the protections afforded by the dormant Commerce Clause do not apply to the commercial cannabis industry, a federally illegal market. *See, e.g., Variscite, Inc. v. City of Los Angeles*, No. 2:22-CV-08685-SPG-SK, 2025 WL 433448 (C.D. Cal. Feb. 4, 2025); *Peridot Tree, Inc. v. City of Sacramento ("Peridot Tree II")*, No. 2:22-CV-00289-KJM-SCR, 2024 WL 4857648 (E.D. Cal. Nov. 21, 2024); *Jensen v. Md. Cannabis Admin.*, 719 F. Supp. 3d 466 (D. Md. 2024); *Variscite NY Four, LLC v. N.Y. State Cannabis Control Bd.*, No. 123-CV-01599 (AMN/CFH), 2024 WL 406490 (N.D.N.Y. Feb. 2, 2024); *Peridot Tree WA Inc. v. Wash. State Liquor & Cannabis Control Bd. ("Peridot Tree WA")*, No. 3:23-CV-06111-TMC, 2024 WL 69733 (W.D. Wash. Jan. 5, 2024); *Brinkmeyer v. Wash. State Liquor & Cannabis Bd.*, No. C20-5661 BHS, 2023 WL 1798173 (W.D. Wash. Feb. 7, 2023); *Original Invs., LLC v. State*, 542 F. Supp. 3d 1230 (W.D. Okla. 2021).

In fact, three of those district courts have explicitly held that it would be inappropriate to use the equitable powers of a federal court to enjoin a commercial cannabis licensing requirement. *See Peridot Tree II*, 2024 WL 4857648 at *6 ("Federal district courts cannot employ their equitable powers if doing so would effectively revisit decisions Congress made when it passed the [CSA]." (citing *Oakland Cannabis Buyers' Co-op*, 532 U.S. at 497–98)); *Jensen*, 719 F. Supp. 3d at 480 ("[T]he granting of a preliminary injunction based on the dormant Commerce Clause would ultimately serve to encourage interstate participation in a federally illegal practice . . . This Court declines to use its equitable power to encourage participation in activities that Congress has expressly prohibited."); *Original Invs.*, 542 F. Supp. 3d at 1233, 1237 ("Because the requested relief would facilitate criminal acts, the court 'will not lend its aid to the perpetration of criminal acts.'" (quoting *Cartlidge v. Rainey*, 168 F.2d 841, 845 (5th Cir. 1948))). Here, the Court likewise "declines to use its equitable power to encourage participation in activities that Congress has expressly prohibited." *See Jensen*, 719 F. Supp. 3d at 480.

/ / /

/ / /

# CONCLUSION

By enjoining the enforcement of the LPA Sections or granting Plaintiff's requested declaratory relief, the Court would undoubtedly be "lend[ing] its judicial power to a plaintiff who seeks to invoke that power for the purpose of consummating a transaction in clear violation of the law."  *See Yellow Cab Transit Co.*, 321 U.S. at 387.  The Court declines to do so.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss.  No amendment to the Complaint can cure the illegality of Plaintiff's business; therefore, the Court **DISSMISSES WITH PREJUDICE** the Complaint in its entirety.

The Court declines to reach the reach the questions of (1) whether the Attorney General is entitled to sovereign immunity under the Eleventh Amendment, (2) whether the timing of Plaintiff's challenge precludes Plaintiff from seeking relief, and (3) whether the Complaint fails to state a claim.  Additionally, the Court **DENIES AS MOOT** Defendants' Request for Judicial Notice.

Because the Court has dismissed with prejudice the Complaint in its entirety, the Court **DENIES AS MOOT** Proposed Intervenor Defendant IBT's Motion to Intervene. *See W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011) ("Because the underlying litigation is over, we cannot grant WCSPA any 'effective relief' by allowing it to intervene now.").  Likewise, the Court **DENIES AS MOOT** IBT's Requests for Judicial Notice.

**IT IS SO ORDERED.**

Dated:  March 12, 2025

_____
Honorable Todd W. Robinson
United States District Judge

24-CV-753 TWR (AHG)